The City of Elkhart *v.* Wickwire *et al.*

Judgment affirmed.

Filed Oct. 17, 1889; petition for a rehearing overruled Dec. 19, 1889.

<hr />

No. 14,050.

## THE CITY OF ELKHART *v.* WICKWIRE ET AL.

MUNICIPAL CORPORATION.—*Assessments.*—*Collateral Attack.*—*Presumption.*—In a collateral attack upon the right of the city to enforce its assessments, every presumption will be taken in favor of the action of the city and its officers, and unless the complaint discloses a state of facts which show clearly that the assessments are void, the right to enforce their collection will be presumed.

SAME.—*Ten Per Cent. Limit.*—*Assessments Void only as to Excess.*—Assessments for the construction of sewers, drains and cisterns which exceed ten per cent. of the assessed value of the property appearing upon the tax duplicate, prohibited by the proviso of section 3106, R. S. 1881, relating to their construction, are void only as to the excess; and plaintiffs seeking to annul the assessments can not complain in a collateral proceeding until they have paid, or offered to pay, all except the excess.

121 331
121 537

121 331
125 462
126 170
127 178

121 331
131 110

121 331
149 520
152 370
121 331
163 210

SAME.—*Section 3106, R. S. 1881.—Specification 43 Unmodified.*—Section 753, Elliott's Supp., relating to street improvements and the collection of assessments therefor, neither limits nor widens in any way the operation of specification 43, section 3106, relating to the construction of sewers, drains and cisterns.

SAME.—*Improvement Ordinances.—Publication.—Property-Holders Chargeable with Notice.*—The statute for the incorporation of cities makes provision for the publication of only such ordinances as are penal in their character. It is the duty of residents of the city to take notice of the acts and proceedings of the common council relating to public matters, and property-holders knowing that improvements are being made must inform themselves as to the authority by which it is done.

SAME.—*Contractors.—Payment of by City.*—The ordinances having provided how the assessments should be made, and the proportion to be paid by the property-holders and by the city, declaring the assessments liens upon the property, and providing the mode of their collection, it was proper for the city to pay the contractors and levy the assessments in instalments, thereby lessening the burden of the property-holders.

SAME.—*Precepts.—May Issue in City's Name.*—In such a case, although the ordinances did not provide in whose name the precepts should issue, the payment by the city not discharging the assessments as against the property-holders, the money being still due the city, the assessments may be made for the benefit of the city and precepts issued in its name.

SAME.—*Assessment of Property.—How Shall be Made.*—That the property was not assessed as provided for in section 3163, R. S. 1881, is immaterial, as the section under which the improvement was made (3106, R. S. 1881) provides that the estimated cost and assessment shall be made upon the property benefited thereby in such equitable manner as the common council may deem just.

SAME.—*Benefits.—Appointment of Committee to Ascertain.*—A resolution in accordance with the provisions of the ordinances and with the statute, by which a committee is appointed to ascertain the benefits to the different pieces of property, is unobjectionable.

From the Elkhart Circuit Court.

*J. H. Baker, J. H. Defrees, Jr., P. L. Turner* and *O. T. Chamberlain,* for appellant.

*H. C. Dodge,* for appellees.

BERKSHIRE, J.—This is an action to annul and enjoin certain assessments which the common council of the appellant has made against the different properties owned by the appellees.

The City of Elkhart *v.* Wickwire *et al.*

The complaint, in brief, is as follows : That the common council enacted an ordinance for the construction of a sewer along one of its streets, known as Second street, from a certain named point on the lands owned by the Lake Shore and Michigan Southern Railway Company to the St. Joseph river ; that the ordinance was duly enacted, and, as we understand the complaint, there is no objection made to the validity of the ordinance, but the cause of complaint is that the ordinance was never published, and, therefore, the appellees were uninformed as to its enactment and contents ; that after the passage of the ordinance, and on the 7th day of October, 1884, and before any estimate of the cost of the improvement, and before having ascertained that its cost would not exceed ten per cent. of the assessed value of the real property to be affected, the appellant entered into a contract for the construction of said sewer, a copy of which is embodied in the complaint; that the work was fully completed on the 13th day of May, 1885, accepted by the appellant and fully paid for out of its city treasury ; that, at the time the work was completed and paid for, no estimate of its cost had ever been made, and the appellees had no notice that the city intended to assess the appellees for its reimbursement ; that, on the 1st day of June, 1885, the city council of the appellant duly enacted another ordinance for the construction of other and different sewers than said Second street sewer ; that the description of the property declared in said ordinance to be benefited by said last-mentioned sewer included all the property bordering upon, or in any way benefited by, the Second street sewer, all of which was sufficiently drained at the time by the said Second street sewer.

This ordinance is also embodied in the complaint, after which is the following averment: " That although it was recorded as set out, the following amendment was made, to wit : ' That said sewer pipes west of Second street extend to Third street, and that they be laid in the center of each al-

ley from Sycamore street up to and including the first alley south of Harrison street;'" but nothing further is alleged with reference to the amendment; that, on the 30th day of June, 1885, the appellant let the contract for the construction of all of said sewers; that at no time prior to the letting of said contract had the appellant caused any estimate to be made of the cost of the improvement, and had in no way ascertained that the cost thereof would not exceed ten per cent. of the assessed value of the property to be benefited thereby; and that the contractors fully completed said sewers on the 1st day of September, 1885, and the same were paid for out of the general revenue of the city; that, on the 10th day of March, 1886, by resolution the said common council of said city appointed three of its members to make an estimate of benefits resulting to property from the construction of said sewers; that at no time prior to March 10th, 1886, had any committee of said council taken any action towards assessing any of the expense of said work against the appellees or their property; that on said day, without in any manner notifying the appellees, or without any precedent publication of said ordinances, or without giving the appellees or other interested citizens an opportunity to be heard as to any of the matters involved in the construction of said sewers, or the matter of said assessment, the said committee made its report to the said common council, apportioning to each piece of property the amount that should be assessed against it because of the accruing benefits on account of the construction of said sewers; that the report was approved and the amount, as apportioned by the committee, assessed against each of said several pieces of property by resolution adopted by said council, nine of the members of said council voting in the affirmative and three in the negative; that, on the 14th day of April, 1886, the said common council directed the city treasurer to proceed with the collection of said assessments; that the several assessments are unjust and unequal as between the several appellees, and

as between them and other persons who are not parties to the action, and are not based on a just and equitable assessment of the expenses incurred and benefits to accrue from said improvements; that the cost of said sewers and the assessment against the property of the appellees, each and severally, exceed a sum equal to ten per cent. of the valuation for taxation; that those of the appellees who own property on said Second street which is not situated upon or abutting said lateral sewers, are assessed for the cost of the construction of said Second street sewer as well as for the construction of said lateral sewers; and that those of them who own property abutting on said lateral sewers, and not abutting on said Second street sewer, are assessed for the cost of constructing said Second street sewer as well as said lateral sewers; that said Second street is two hundred and fifty rods long, running north and south, and said Second street sewer extends the full length thereof; that said lateral sewers connect with said Second street sewer every twenty-five rods east, and a like distance west from said Second street sewer; that no ordinance, by-law, tax authorized by law, resolution, or action of said appellant, or its common council, or other officer thereof, than above fully set forth, has ever been passed or taken by which the appellant claims the right to said assessment and tax against appellees and their property; that said assessment was not made upon the basis of the whole length of said street so improved at a uniform price estimated per running foot; and said appellant has not sought, and is not now seeking, to enforce said assessment by the issuance of a precept to the contractor, but has ordered its treasurer to enforce said assessments for its reimbursement; that the appellant has no right to claim, maintain or assert said lien against the property of the appellees; that all of said sewers were established by said appellant as a public improvement of the streets of said city generally, and not for the benefit of the appellees or of their property.

It is then averred that the said assessments have thrown a

cloud upon the appellees' title, followed with a prayer that the assessments be annulled; that the appellees' title be quieted, and that an injunction be granted.

The appellant demurred to the complaint, which demurrer was overruled and the proper exception taken. The case was then put at issue by the filing of an answer in general denial, and submitted to the court for trial, with a request for a special finding; a special finding was made, and exceptions to the conclusions of law taken by the appellant; motions for a *venire de novo* and for a new trial were made by the appellant; the motions were overruled and proper exceptions reserved.

There are several errors assigned, but it only becomes necessary that we rule upon the first one: "The court erred in overruling the demurrer to the complaint."

The complaint is clearly bad. Counsel for the appellees suggests that the complaint is not in the nature of a bill in equity for an injunction, but is a complaint to set aside the assessments complained of, and to have their titles to their respective pieces of property quieted as against said assessments. This suggestion is made in answer to the point made by appellant's counsel, that the appellees will not be granted any relief by way of injunction if any part of the assessment is legal until they pay, or offer to pay, that part which is legal.

Whether the action is in the nature of a bill to enjoin the collection of the assessments, to annul and set the same aside, or to quiet title to the real estate upon which they rest, can make no difference, as the principle involved, in either event, is the same. In either case the action is, in character, an equitable proceeding, and if any part of the assessment is legal, though a part may be illegal, equity will not afford any relief until that part which is legal is paid, or an offer made to pay it.

But the complaint does not present a case where the assessment is valid in part and invalid in part; nor does it state a good cause of action for relief against a voidable as-

sessment.   The complaint shows an assessment made by the appellant, a city organized and chartered under the laws of the State of Indiana, against the several pieces of property of the appellees, located within the corporate limits of the city, on account of the construction of certain sewers along certain streets of the city.

There is no question but that, under the law, the city had the power to construct sewers, and to make assessments upon real estate situated inside of the corporation, to pay therefor; in fact, counsel for the appellees concede this.

There can be no question but that this action is in no sense a direct proceeding to contest the right of the city to enforce the assessments, but is a collateral attack upon its right so to do.

This being true, every presumption will be taken in favor of the action of the city and its officers, and unless the complaint discloses a state of facts which show clearly that the assessments are void, the right to enforce their collection will be presumed.

There are two sections of the statute which give to cities, organized under the general law for the incorporation of cities, power to construct sewers.   Sections 3106 and 3151, R. S. 1881.   Specification 43 of the first named section reads as follows:

" To construct and regulate sewers, drains, and cisterns, and provide for the payment of the cost of constructing the same; to cause the same to be done by contract given to the best bidder, after advertising to receive proposals therefor. To provide for the estimate of the cost thereof, and the assessment of the same upon, the owners of such lots and lands as may be benefited thereby, in such equitable proportion as the common council may deem just; which estimate shall be a lien upon such lots and lands, and may be enforced by sale of the same, in such manner as the common council may provide:  *Provided, however,* That not to exceed ten per

cent. of the value of such lots or lands, as the same is valued and assessed upon the tax duplicate for State and county or city taxes, shall be assessed against such lot or lands in any one year."

Section 3151 reads as follows:

" The common council shall have power to construct and regulate sewers, drains, and cisterns, and provide for the payment of the cost of constructing the same; and when in its opinion, the construction of any sewer would be of public benefit to the city and necessary for the improvement of any street or streets, for the removal of surface or storm water therefrom, may, by a two-thirds vote, cause to be paid out of the city treasury such portion of the cost of the construction of such sewer as, in the opinion of said council, would be equitable and just."

Section 3106 is found in an act approved March 10, 1873, which was an amendment to an act approved March 14, 1867. Section 3151 is a part of an act approved April 14, 1881. This last act is composed of three sections, said section quoted being the third ; sections 1 and 2 are amendments to certain sections of the said act approved March 14, 1867, said section 1 being invalid, for the reason that the section amended had theretofore been amended.

Said section 3151 is not an amendment of any other statute, but is a new and independent section.    But it is evident that the latter clause of said section, beginning with the semicolon, should be construed with, and as though it was a part of, sections 3161, 3162, 3163, 3164, and 3165, R. S. 1881; "and when, in its opinion, the construction of any sewer would be of public benefit to the city, and necessary for the improvement of any street or streets, for the removal of surface or storm water therefrom, may, by a two-thirds vote, cause to be paid out of the city treasury such portion of the cost of the construction of such sewer as, in the opinion of said council, would be equitable and just."

The sewer that is here provided for is a part of the street

improvement, made so by the statute itself, and is only to be made when necessary to remove the surface or storm water from the street.

The first clause of the section gives to the common council general power to construct and regulate sewers, drains and cisterns, and to provide for payment therefor out of the city treasury, and no doubt authorizes a tax to be levied for that purpose throughout the city. But there is nothing in the record to indicate that in building the sewers out of which this litigation arises the common council intended to exercise the power granted in either branch of this section. It is evident that the said sewers were constructed under the authority given in specification 43, section 3106. Every requirement under this provision seems to have been complied with, from the passage of an ordinance to the completion of the improvement.

We have examined the ordinances critically, and are compelled to say that they are unusually full and accurate in their provisions.

The proviso in said specification of section 3106, under which said sewers were constructed, as will be observed, forbids an assessment during any one year to exceed ten per cent. of the assessed value of the property to be affected as the same appears on the tax duplicate for State and county or city taxes.

The averments in the complaint relating to the said proviso are not very satisfactory; a conclusion of fact is averred rather than a statement of the facts from which the court would be able to draw a conclusion. But if we concede that the assessments exceeded ten per cent. of the assessed value of the property as it appears on the tax duplicate, the averment does not render the complaint good, or tend in that direction; the entire assessment is not void under such circumstances, but only so much as is in excess of ten per cent. of such valuation ; and the appellees not having paid, or of-

fered to pay, all except the excess, are in no condition to complain in a collateral proceeding.

Section 1 of the act, approved April 13th, 1885 (Elliott's Supp., section 753), may modify or repeal section 3151, *supra* (as to this we express no opinion), but whether so or not it in no way limits or widens the operation of specification 43, section 3106, *supra.*

The subject-matter of the later act, as indicated both by its title and in the body of the act, is entirely different from that covered by the earlier act. The one relates to street improvements and the collection of assessments therefor; the other to the construction of drains, sewers and cisterns, none of which are necessarily a part of a street improvement.

It is contended by the appellees that as the ordinances were not published, and no actual notice thereof given to them, they are not bound thereby.

The statute for the incorporation of cities makes no provision for the publication of ordinances except such as are penal in their character, and therefore the appellees have no cause to complain because the ordinance was not published. The appellees were residents of the city, at least we may so presume, and it was their duty to take notice of the acts and proceedings of its common council relating to public matters. And the appellees knew that the improvements were going on, and it became their duty as property-holders to inform themselves as to the authority by which the common council were making the improvements.

The fact that the work was completed and paid for by the city out of its general fund worked no prejudice to the appellees. It could make no difference to them whether they paid to the contractors or to the city.

The ordinances provided how the assessments should be made and the proportion that should be paid by the property-holders and by the city; declared the assessments liens upon the property, and provided the manner in which the assessments should be collected.

If the city saw proper to pay the contractors and levy the assessments in instalments, thereby rendering it less burdensome for the property-holders to pay their assessments, the city ought not to be prejudiced thereby. The ordinances did not provide in whose name the precepts should issue, but if necessary the law will treat the city as an equitable assignee of the assessments, and allow the precepts to issue in the names of the contractors for the use of the city. But we are unable to see any good reason why the assessments might not be made for the benefit of the city, and precepts issued in its name; the payment by the city did not discharge the assessments as against the property-holders, and as the money is due to the city we can see no good reason why the precepts might not thus issue. The statute provides that the estimate may be enforced in such manner as the common council may provide.

That the property was not assessed as provided for in section 3163, *supra,* is wholly immaterial, as the section under which the improvement was made provides that the estimated cost and assessment shall be made upon the property benefited thereby in such equitable manner as the common council may deem just.

The manner of making the assessment is left to the discretion of the common council.

Whether the sewers which were constructed by virtue of the second ordinance were necessary and proper was a matter entirely within the discretion of the common council.

The resolution by which the committee was appointed to ascertain the benefits to the different pieces of property was in accordance with the provisions of the ordinances and with the statute, and was eminently proper.

If the assessments were unequal, that was a question to be determined by the common council when brought before it.

The judgment is reversed, with costs, with instructions to the court below to sustain the demurrer to the complaint.

Filed Oct. 30, 1889; petition for a rehearing overruled Dec. 19, 1889.